**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DONALD E. ROSS IRREVOCABLE LIFE INSURANCE TRUST DATED JUNE 20, 2007, through WILMINGTON SAVINGS FUND, SOCIETY FSB, as successor in interest to CHRISTIANA BANK & TRUST COMPANY | ) | C.A. No. |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| PHL VARIABLE INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff the Donald E. Ross Irrevocable Life Insurance Trust Dated June 20, 2007 (the "Ross Trust" or "Plaintiff"), through Wilmington Savings Fund Society, FSB, as successor in interest to Christiana Bank & Trust Company, as its trustee, complains of Defendant PHL Variable Insurance Company ("Phoenix" or "Defendant"), as follows:

**NATURE OF ACTION**

1. This is an action for breach of contract and breach of the duty of good faith, arising from Defendant Phoenix's failure to pay the Ross Trust the $4,000,000 death benefit owed by Phoenix under a life insurance policy Phoenix issued to the Ross Trust on the life of Donald Ross (the "Policy").

2. Suing under the fictitious name John Doe Trust 51, the Ross Trust also is a plaintiff in another lawsuit against Phoenix, Phoenix Life Insurance Company ("Phoenix Life") and The Phoenix Companies, Inc. ("PNX") (collectively "the Phoenix Defendants") entitled *Wilmington Savings Fund Society, FSB, as successor in interest to Christiana Bank & Trust*

*Company, as Trustee for John Doe Trust 1, et al. v. PHL Variable Insurance Company, et al.* which, following the March 29, 2013 transfer from the Central District of California, has been assigned Civil Action No. 1:13-cv-00499-RGA and is pending before this Court (the "Related Action"). A copy of the operative pleading, the First Amended Complaint ("FAC"), in the Related Action is attached hereto as Exhibit 1.

3. The Related Action was filed by the Ross Trust and 59 other plaintiff insurance trusts owning policies issued by Phoenix on June 6, 2012, more than 3 months before the September 30, 2012 death of Donald Ross and the occurrence of the other facts giving rise to the claims being asserted in this action. The claims in the Related Action arise from various wrongful acts committed by the Phoenix Defendants before Mr. Ross died. Thus, while the Ross Trust believes that this action is related to the Related Action because the Ross Trust and Phoenix are parties to both actions and the two actions involve the same Policy, the claims and damages alleged in the Related Action are different. The claims and damages in this action and the Related Action also arose from different facts at different times.

4. The First Amended Complaint in the Related Action alleges claims for, among other things, civil RICO and fraud, breach of contract, and declaratory relief regarding the policies sold to the Ross Trust and the 59 other plaintiff insurance trusts. The gravamen of the Related Action is the allegation that the Phoenix Defendants conspired and secretly instituted a scheme in which they affirmatively misrepresented to the Ross Trust and the other plaintiff insurance trusts that the policies were in Phoenix's view in force, premiums for the policies were due and, if the premiums were paid, death benefits would be paid. The true facts were that, before making these representations, the Phoenix Defendants had made a business decision: they would collect millions in dollars of premiums by representing that the policies were in force and

that death benefits would be paid, but never actually pay any death benefits without being compelled to do so. The Phoenix Defendants engaged in a classic mail and wire fraud, inducing victims such as the Ross Trust to pay them millions of dollars with the promise of future benefits that the Phoenix Defendants never intended to pay. By reason of the Phoenix Defendants' RICO violations and fraud, the Ross Trust and the other plaintiff insurance trusts suffered harm, including the loss in the value and marketability of the life insurance policies they own.

5. The First Amended Complaint in the Related Action also alleges that Phoenix breached the 60 policies by impermissibly increasing the costs charged under the policies in direct violation of the policies' terms.

6. The First Amended Complaint in the Related Action also seeks declaratory relief regarding the validity of the 60 policies. The Phoenix Defendants' actions, including seeking to rescind or void several policies owned by the plaintiff insurance trusts, caused substantial harm to the value of the policies on the secondary market and created a ripe controversy between the plaintiff insurance trusts and the Phoenix Defendants regarding the validity of the policies. In other words, even before Mr. Ross died, there was a ripe controversy between Phoenix and the Ross Trust regarding the validity of the Policy because (i) Phoenix had already diminished the marketability and value of the Policy; and (ii) Phoenix had already determined that it would not honor the Policy when Mr. Ross ultimately died.

7. The acts complained of in this Complaint occurred after the facts upon which the Related Action is based, caused the Ross Trust to suffer new and different damages and give rise to new, separate and distinct claims by the Ross Trust against Phoenix for breach of contract and insurance bad faith. Now that Mr. Ross has died, Phoenix has acted just as the Ross Trust alleged it would in the Related Action and refused to pay the Ross Trust's claim. Thus, in

addition to the various types of misconduct Phoenix committed that is subject to the Related Action, Phoenix has now breached the Policy (in yet another way) by refusing to pay the death benefit and has also breached its duty of good faith to the Ross Trust in its handling of the Ross Trust's claim. These actions taken by Phoenix since the time the Related Action was filed form the basis for this new Complaint.

8. Donald Ross died on September 30, 2012, and Phoenix received Mr. Ross's death certificate from the Ross Trust on November 1, 2012. The Policy promises that Phoenix will pay the death benefit to the Policy's beneficiary – here the Ross Trust – upon receipt of due proof of the death of the insured. Thus, upon receiving Mr. Ross's death certificate from the Ross Trust on November 1, 2012, Phoenix became obligated to pay the Ross Trust $4,000,000. Nevertheless, more than five months later, Phoenix has not paid the $4,000,000 death benefit owed under the Policy and has provided no explanation to the Ross Trust for its failure to comply with its contractual obligations.

9. In direct breach of its contractual obligations to the Ross Trust, Phoenix notified the Ross Trust that it would not pay the benefits due under the Policy unless the Ross Trust completed a Certification and Acknowledgement of Trust Agreement ("Trust Certification Form") containing a series of questions about the Ross Trust, the beneficiaries of the Ross Trust, and other information, none of which was required to be provided under the Policy. Phoenix's refusal to pay the Ross Trust the $4,000,000 due under the Policy, and demand that the Ross Trust supply information not required by the Policy, was a breach of the Policy as well as a breach of Phoenix's duty of good faith to the Ross Trust.

10. Hoping that Phoenix would recognize the error of its ways, and comply with its contractual obligations, on December 12, 2012, without any obligation to do so, the Ross Trust

provided Phoenix with the completed Trust Certification Form. Unfortunately, this good faith action by the Ross Trust was met only with further bad faith on the part of Phoenix. Instead of paying the Ross Trust's claim after the Ross Trust complied with Phoenix's unlawful demand, Phoenix delayed responding in any manner for a month and then sent the Ross Trust a letter claiming that it was "actively reviewing" the Ross Trust's claim. Nearly three more months have passed since that letter, and Phoenix has still not paid the Ross Trust's claim under the Policy or provided any further update or explanation for its now five month delay in paying the Ross Trust's claim.

11. Phoenix's actions in handling the Ross Trust's claim are an egregious example of insurer bad faith. Phoenix was obligated to pay the Ross Trust's claim more than five months ago but has instead required the Ross Trust to jump through hoops not required by the Policy while performing a sham investigation regarding a Policy that, as alleged in the Related Action, Phoenix has long ago decided that it would not honor. The Ross Trust is thus entitled not only to the $4,000,000 due under the Policy with full interest, but should also be awarded its attorneys' fees and punitive damages based on Phoenix's willful and malicious conduct.

## THE PARTIES

12. Wilmington Savings Fund Society, FSB, as successor-in-interest to Christiana Bank & Trust Company, as trustee for Plaintiff, is a Delaware citizen which has its principal place of business at 500 Delaware Ave., Wilmington, DE 19801.

13. Upon information and belief, Phoenix is a corporation organized under the laws of the State of Connecticut, with its principal place of business located in Hartford, Connecticut. Phoenix is licensed to do business in the State of Delaware. Upon information and belief, Phoenix is a wholly owned subsidiary of PM Holdings, Inc., which is a wholly owned subsidiary

of Phoenix Life Insurance Company. Phoenix Life Insurance Company is a wholly owned subsidiary of the Phoenix Companies, Inc., which became a publicly traded entity in 2001 and trades under the symbol "PNX."

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between Plaintiff and Defendant and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over the Defendant, as among other reasons, it issued insurance coverage in Delaware to a Delaware policy owner and beneficiary. It also has made continuous and systematic contacts with Delaware, and is licensed as an insurer in the State of Delaware.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this District and the Policy that is the subject of this action was issued in this District, such that the property that is the subject of this action is situated in this District.

## Phoenix's Issuance of The Policy To The Ross Trust

17. On or about June 20, 2007, Donald Ross established the Ross Trust to own a life insurance policy on his life.

18. On or about July 5, 2007, an application for the life insurance policy to be issued to the Ross Trust (the "Application") was executed and submitted to Phoenix.

19. In the Application, Donald Ross was identified as the "Proposed Insured." The Ross Trust was identified in the Application as the owner of the Policy. The Ross Trust was also identified as the sole beneficiary of the Policy in the Application.

20. In exchange for the agreement to pay premiums and other consideration, Phoenix subsequently issued and delivered the Policy to the Ross Trust. The initial face amount of the Policy is $4,000,000. The Policy's Schedule Pages state that the "Owner, Beneficiary" is identified in the Application, which listed the Ross Trust as the proposed owner and beneficiary. The Ross Trust remains both the Policy owner and beneficiary. The Policy's "Issue Date" was August 12, 2007.

21. All premiums due under the Policy to date have been paid in accordance with the terms of the Policy, and Plaintiff has duly performed all other conditions of the Policy on its part.

**Phoenix Breaches The Policy and Its Duty of Good Faith To the Ross Trust**

22. Delaware law provides that the maximum amount of time that an insurer can reserve to itself for considering whether or not to pay a claim under a life insurance policy is two months. 18 Del. C. § 2914. However, rather than availing itself of this two month period, Phoenix's Policy provides: "We [Phoenix] will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured, subject to any applicable provisions of the policy." Thus, Phoenix was contractually obligated to pay the $4,000,000 due under the Policy to the Ross Trust upon receiving proof of Mr. Ross's death.

23. Mr. Ross died on September 30, 2012.

24. On November 1, 2012, the Ross Trust provided Phoenix with a copy of Mr. Ross's death certificate (due proof of death), returned the Policy to Phoenix, and completed a "Beneficiary Statement," providing Phoenix with information regarding where to pay the $4,000,000 death benefit.

25. In direct breach of the terms of the Policy, in which Phoenix promised to pay the $4,000,000 death benefit upon proof of death, Phoenix refused to pay the Ross Trust the

$4,000,000 owed under the Policy. Instead, Phoenix demanded, without any basis in the Policy, that the Ross Trust complete the Trust Certification Form, providing information not required by the Policy as a condition for payment. As detailed in the Related Action, this behavior by Phoenix is part of its pattern and practice of seeking to avoid honoring policies it believes have been sold to investors, despite the fact that Phoenix knowingly sold such policies and that at one time they constituted its core business.

26. By refusing to pay the Ross Trust's claim and insisting that the Ross Trust provide information not required under the Policy, Phoenix breached its obligations under the Policy and acted in bad faith.

27. In an effort to receive the $4,000,000 owed to it, and despite Phoenix's blatant breach of the Policy, the Ross Trust complied with Phoenix's unlawful demand and provided Phoenix with a completed Trust Certification Form on December 12, 2012.

28. Rather than paying the Ross Trust's claim after it complied with Phoenix's unlawful demand and provided the Trust Certification Form, Phoenix delayed nearly a month in even acknowledging receipt of the Form. On January 11, 2013, Phoenix belatedly acknowledged receipt and informed the Ross Trust that it was purportedly "actively reviewing" the Ross Trust's claim. The truth, however, as detailed extensively in the Related Action was that Phoenix had long before decided that it would not honor the Policy and pay the benefits due under the Policy to the Ross Trust when Mr. Ross died.

29. Another three months have passed since the time of Phoenix's disingenuous January 11, 2013 letter. Thus, Phoenix has now delayed over five months in processing the Ross Trust's claim and four months since receiving the Trust Certification Form which it unlawfully demanded. Not only has Phoenix still not paid the Ross Trust the $4,000,000 due under the

Policy, it has provide the Ross Trust no further updates or any explanation for its extraordinary and unlawful delay in processing the Ross Trust's claim. Phoenix has thus failed to act reasonably promptly in responding to claims communications and has failed to affirm or deny coverage within a reasonable time after the claim was submitted and even after it received the information it unlawfully demanded from the Ross Trust.

30. Phoenix did not, as its Policy promises, pay the death benefit to the Ross Trust after having received proof of Mr. Ross's death. Nor did it pay the Ross Trust's claim, or deny the Ross Trust's claim, within two months. Thus, even if Phoenix had availed itself of the maximum two month period for consideration of claims provided under Delaware law, it still would not have complied with Delaware law in processing the Ross Trust's claim.

31. The now more than five month delay by Phoenix in processing the Ross Trust's claim under the Policy is an egregious breach of Phoenix's duty of good faith to the Ross Trust under Delaware law, as is Phoenix's failure to pay the Ross Trust's claim upon receipt of due proof of death, its unlawful demand that the Ross Trust comply with requirements not contained in the Policy, and its failure to communicate with the Ross Trust fairly and honestly regarding the status of its claim.

**PHOENIX'S DETERIORATING FINANCIAL CONDITION**

32. As detailed in the Related Action, the financial position of Phoenix and its parent company was devastated by the global financial crisis in 2008-2009. (See Related Action FAC ¶¶ 1, 85-89). PNX suffered a reported net loss of approximately $726 million in 2008. PNX reported an additional loss of $319 million in 2009, bringing to well over $1 billion its reported total losses in 2008-2009. As a result of these enormous losses, PNX and Phoenix were downgraded by the ratings agencies to "junk" status and were forced to fire a substantial portion

of their workforce. PNX's stock, which had traded at over $15 a share during much of 2007 plummeted to as low as 21 cents a share in 2009. These financial troubles were the impetus for Phoenix beginning to mistreat its policyholders through a systematic practice of attempting to avoid paying large claims.

33. As evidenced by recent SEC filings, Phoenix's financial condition has become more dire. Further, it has become clear that Phoenix has not been truthful about the true extent of its financial distress or, perhaps even worse, has not fully appreciated the extent of its problems.

34. On September 18, 2012, Phoenix reported to the SEC that its audited financial statements for 2009, 2010 and 2011, and its unaudited financial statements for the quarterly periods ended June 30, 2012, March 31, 2012, September 30, 2011, June 30, 2011, and March 31, 2011, needed to be restated "because of certain errors in those financial statements . . . . The Audit Committee evaluated these errors and determined that they had a material impact on the Previously Issued Financial Statements" such that those statements and related financial information "should no longer be relied upon."

35. On November 8, 2012, Phoenix amended and supplemented its September 18, 2012 Form 8-K to disclose additional material errors in its previously issued financial statements. PNX also reported to the SEC on November 8, 2012 that it had discovered material errors in its previously filed financial statements, and that those statements should no longer be relied upon and would need to be restated. In a second filing on November 8, 2012, PNX further reported that it was postponing the announcement of its financial results for the third quarter of 2012.

36. On November 20, 2012, PNX issued a news release (filed with the SEC) announcing its estimated, unaudited financial results for the third quarter of 2012. In that

release, PNX reported a third quarter 2012 net loss of $45.8 million, operating loss of $62.6 million, and pre-tax operating loss of $80.7 million.

37. On March 15, 2013, PNX reported to the SEC that the filing of its restated financial information and third quarter 2012 Form 10-Q would be further delayed, that it would not timely file its 2012 Form 10-K, and that it would provide an update on the restatement on or before April 30, 2013. In a second filing with the SEC that day, PNX further reported that it "continues to assess its disclosure controls and procedures and internal control over financial reporting. Management believes that it has currently identified multiple material weaknesses that will be reported in the 2012 Form 10-K." Phoenix filed a substantially similar report with the SEC, also on March 15, 2013.

38. Phoenix's precarious financial position and delay in releasing financial statements and restatements has not gone unnoticed by the ratings agencies. On March 19, 2013, A.M. Best announced that it was maintaining its "under review with negative implications status" of PNX and its subsidiaries, including Phoenix. Fitch Ratings similarly announced on March 19, 2013 that it was maintaining its "Ratings Watch Negative" on PNX and its primary insurance operating subsidiaries, including Phoenix. The following day, Moody's Investors Service announced that it had downgraded PNX's senior debt rating to Caa1 from B3 and was continuing the review for downgrade.

39. As the filings by Phoenix and PNX with the SEC make clear, Phoenix is in substantial financial trouble. Phoenix and PNX already have spent over four months working to complete the restatement of their financial statements (with no end in sight), and have informed the SEC that the errors identified in the restatement process to date will have a materially adverse impact on their financials.

40. Phoenix's substantial financial trouble has been a motivating force in its wrongful conduct with respect to the Ross Trust's claim. Additionally, Phoenix's substantial financial trouble casts doubt on its ability to satisfy its obligations to the Ross Trust under the Policy if Phoenix is not forced to pay the claim until after prolonged litigation. Thus, in order to ensure that Phoenix will be capable of satisfying a judgment against it, Phoenix should be required to post security before contesting the lawsuit.

## COUNT I

## BREACH OF CONTRACT

41. Plaintiff realleges and incorporates by reference each of the allegations made at paragraphs 1 through 40, inclusive.

42. The Policy is a binding, valid, and enforceable insurance contract covering the life of Donald Ross.

43. The Policy provides for a death benefit in the amount of $4,000,000.

44. The Policy provides: "We [Phoenix] will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured, subject to any applicable provisions of the policy."

45. The Ross Trust has complied with all applicable conditions of the Policy including timely payment of all premiums due under the Policy.

46. Phoenix has accepted and retained all premiums paid for the Policy. In total, Phoenix has accepted and retained $676,205 in premiums for the Policy.

47. Donald Ross died on September 30, 2012.

48. On November 1, 2012, the Ross Trust submitted a claim for payment of the death benefit under the Policy and provided Phoenix proof of Mr. Ross's death, by providing Phoenix with Mr. Ross's death certificate.

49. Phoenix refused to pay the Ross Trust the death benefit due under the Policy upon receipt of due proof of Mr. Ross's death and instead demanded that it be provided with additional information not required under the Policy. Phoenix's actions were a direct breach of the terms of the Policy.

50. Despite having no obligation to do so, on December 12, 2012, the Ross Trust provided Phoenix with the additional information that Phoenix unlawfully demanded.

51. To date, Phoenix has still not paid the death benefit, despite having received the information it unlawfully demanded.

52. To date, Phoenix has not communicated any claims decision to the Ross Trust. Phoenix has not agreed to honor the claim and has not paid the Ross Trust the $4,000,000 due under the Policy with interest. Phoenix has also not denied the claim and has not returned all premiums with interest to the Ross Trust. Instead, Phoenix has failed to communicate any claims decision and has thus withheld the death benefit and retained all premiums for its own economic use.

53. Phoenix has breached its obligations under its contract with the Ross Trust by failing to provide benefits under the Policy in accordance with its terms.

54. The Ross Trust has been damaged by Phoenix's breach in an amount not less than $4,000,000, plus interest and other consequential damages. The Ross Trust has additionally suffered damages due to Phoenix's breach of contract in that the Ross Trust and its beneficiary have been deprived of investment income and because Phoenix's breach has delayed the Ross

Trust's beneficiary in paying proceeds and/or repaying indebtedness.

**COUNT II**

**BREACH OF THE DUTY OF GOOD FAITH**

55. Plaintiff realleges and incorporates by reference each of the allegations made at paragraphs 1 through 54, inclusive.

56. The Ross Trust and Phoenix entered into an insurance contract, i.e., the Policy, which requires that the parties to the agreement deal with each other fairly and in good faith.

57. Under Delaware law, an insurer has a duty of good faith to its insureds, policyholders and beneficiaries.

58. The Ross Trust has complied with all applicable conditions of the Policy including timely payment of all premiums due under the Policy.

59. Phoenix has accepted and retained all premiums paid for the Policy.

60. Phoenix has failed to deal with the Ross Trust, the Policy Owner and Beneficiary, in good faith by wrongfully failing to pay the Policy's death benefit without a reasonable basis, by refusing to pay the death benefit unless the Ross Trust complied with conditions not required by the Policy, by purposefully prolonging and delaying the claims process and misrepresenting the reason for such delay, by failing to affirm or deny coverage within a reasonable time, by failing to communicate with and provide information to its claimant in a prompt manner, and by engaging in a pretextual claims investigation when Phoenix had long ago internally determined that it will not honor the Policy.

61. As detailed extensively in the Related Action, Phoenix long ago decided that it would not honor this Policy. (*See, e.g.*, Related Action FAC at ¶¶ 94-115). As further detailed in the Related Action, the bad faith actions Phoenix has taken with respect to the Ross Trust's

claim are part of a business practice of Phoenix to systematically seek to avoid honoring its contractual obligations to its policyholders. (*Id.*) Phoenix has engaged in this course of conduct to address its own business and economic interests and has thus placed its own interests above the interests of its policyholders. Phoenix's systematic course of conduct towards its policyholders is an egregious example of insurer bad faith and its behavior with respect to the Ross Trust's claim is part of that pattern of bad-faith claims handling conduct.

62. Phoenix has not only failed to pay the death benefit due to the Ross Trust despite the claim having been submitted more than five months ago, but it has also failed to communicate any claim decision and has retained all of the premiums paid for the Policy, rather than denying the claim and attempting to return premiums. Phoenix continues to retain for its own benefit all funds due to the Ross Trust in plain violation of the Policy and Phoenix's obligation of good faith and fair dealing.

63. Phoenix has acted in bad faith and has engaged in malicious, intentional, fraudulent, and/or grossly negligent conduct that Phoenix knew would result in extraordinary harm. The Ross Trust, therefore, is entitled to punitive and exemplary damages against Phoenix in an amount to be determined at trial.

64. The Ross Trust has suffered damages due to Phoenix's breach of its duty of good faith in that it has been deprived of the insurance coverage for which it paid substantial premiums and is being forced to incur litigation expenses and costs in connection with enforcing the Policy and recovering the death benefit from Phoenix. The Ross Trust has additionally suffered damages due to Phoenix's breach of its duty of good faith in that the Ross Trust and its beneficiary have been deprived of interest and investment income and because Phoenix's breach of the duty of good faith has delayed the Ross Trust's beneficiary in paying proceeds and/or

repaying indebtedness.

65. Under Delaware law, based upon the above allegations, Phoenix has refused to honor the Ross Trust's claim for payment of the proceeds of the Policy without any reasonable justification and otherwise breached its duty of good faith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment ordering as follows:

A. Awarding damages for breach of contract in an amount not less than $4,000,000, plus interest and other consequential damages;

B. Granting Plaintiff compensatory damages, punitive and exemplary damages, costs of suit, expenses, and attorneys' fees expended and incurred herein, with post and pre-judgment interest;

C. Requiring Phoenix to post pre-Answer security in order to address its rapidly deteriorating financial condition and secure its obligations under the Policy and its ability to satisfy a judgment against it in this action; and

D. Granting Plaintiff such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the above-entitled action on all claims for relief for which Plaintiff is entitled to a trial by jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: /s/ *David J. Baldwin*
David J. Baldwin (No. 1010)
Michael B. Rush (No. 5061)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel.: (302) 984-6000
dbaldwin@potteranderson.com
mrush@potteranderson.com

*Attorneys for Plaintiff Donald E. Ross Irrevocable Life Insurance Trust Dated June 20, 2007, by and through its Trustee Wilmington Savings Fund Society, FSB*

OF COUNSEL (applying for *pro hac vice* admission):

John E. Failla
Elise A. Yablonski
Nathan Lander
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
Tel: (212) 969-3000

Nancy Sher Cohen
Lary Alan Rappaport
Joshua J. Pollack
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, California 90067
Tel: (310) 557-2900

Dated: April 8, 2013
1101416 / 40176